IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DUWAYNE BENSON WINGFIELD,** ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **KILOLO KIJAKAZI,** ) <br> **Commissioner of the Social** ) <br> **Security Administration,** ) <br> ) <br> Defendant. ) | Case No. CIV-22-126-GLJ |

## OPINION AND ORDER

Claimant Duwayne Benson Wingfield requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

1

national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Hawkins v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairments *are not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 51 years old at the time of the administrative hearing. (Tr. 163). He completed an associate degree in business administration. (Tr. 176). He has past work experience as a computer specialist. (Tr. 162). Claimant alleges an inability to work since June 26, 2019, due to limitations imposed by degenerative discs in his neck and spine, heart problems, depression, and difficulties walking and standing. (Tr. 155, 158).

### Procedural History

On July 25, 2019, Claimant applied for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq*.) and supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq*.) of the Social Security Act respectively. On April 13, 2021, Administrative Law Judge ("ALJ") Hortensia Haaversen conducted an administrative hearing telephonically in Falls Church, Virginia, and entered an unfavorable decision on September 1, 2021. (Tr. 152-64, 173-94). The Appeals Council denied review making the ALJ's opinion the Commissioner's final decision for the purpose of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation (Tr. 162-63). At step two she determined that Claimant had the severe impairments of degenerative disc disease, obesity, ischemic heart disease/coronary artery disease (CAD), depressive disorder, and anxiety. (Tr. 155). Additionally, she found that Claimant had the nonsevere

impairments of diabetes with vision problems, arthritis, and fibromyalgia. *Id.* She found at step three that Claimant did not meet any Listing. (Tr. 155-57). At step four she found that Claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) & 416.967(b), *i.e.*, he could lift/carry twenty pounds occasionally and ten pounds frequently, and could sit and stand/walk for six hours in an eight-hour workday except that he could never climb ladders, ropes, or scaffolds and only occasionally stoop. (Tr. 157-58). Further, he would require a cane for balance and could only remain in one position for fifteen to twenty minutes before needing to change positions. *Id.* Additionally, he could perform tasks at any level of complexity but would be limited to only occasional decision-making and low-stress jobs. *Id.* Finally, he could only occasionally interact with coworkers, supervisors, and the public. *Id.* The ALJ then concluded that, although Claimant could not return to his previous work, there was work he could perform in the national economy such as marker, router, and assembler of small products. (Tr. 163).

## Review

Claimant contends that the decision of the Commissioner should be reversed because the Appeals Council erred in refusing to admit and consider additional evidence submitted for review, that the ALJ erred by failing to properly consider the impact his limitations have on his RFC, and that the ALJ did not give due consideration to portions of the medical evidence. Specifically, Claimant contends that the Appeals Council should have admitted and considered an alternative Vocational Expert opinion from Tammie Donaldson Alfaro, that the ALJ failed to consider the impact of Claimant's need for a cane

when assigning a light RFC, and that the ALJ did not give proper consideration to the opinion of a treating physician, Dr. Wilson Davis. The Court finds these contentions unpersuasive as discussed below.

As to Claimant's physical impairments, the medical evidence in the record reveals that on October 6, 2016, Claimant underwent an MRI of the lumbar spine which revealed very mild disk bulging and indications of mild instability. (Tr. 488). Dr. Jerry Marlin surgically removed a spinal column bone tumor from Claimant on November 6, 2018. (Tr. 497-500). An MRI performed on December 31, 2018, revealed mild disc bulges in the same areas with mild impingements of the neural exit canals. (Tr. 573-74). A June 24, 2019, MRI showed multilevel mild to moderate central spinal canal stenosis. (Tr. 585-86). On June 26, 2019, Dr. Marlin performed an anterior cervical microscopic discectomy and arthroplasty of C5-6 with a disc implant and spinal cord and nerve root decompression. (Tr. 636). Another MRI, from August 13, 2019, revealed multilevel degenerative changes of the lumbar spine. (Tr. 581-82). Dr. Marlin found on August 22, 2019, that Claimant could return to work without restriction but noted an epidural steroid injection might be helpful. (Tr. 1397). Claimant underwent a cervical interlaminar epidural steroid injection with Dr. Sreenadha Vattam on August 28, 2019. (Tr. 640).

Claimant saw Dr. Vivek Khetpal, a cardiologist, consistently from November 2018 through September 2019. (Tr. 759-826). Dr. Khetpal frequently noted Claimant's slowed gait and decreased range of motion in his neck and back. (Tr. 773, 778, 789, 794, 799). However, Dr. Khetpal also intermittently noted that Claimant had a normal gait and range of motion in his neck. (Tr. 762, 783, 805). On February 13, 2019, and again on September

5

12, 2019, Dr. Khetpal noted that Claimant's "[c]urrent activity level includes ability to climb [two] floors of stairs . . . and perform moderate exercise." (Tr. 764, 810). On September 5, 2019, Dr. Khetpal noted Claimant's intermittent chest discomfort and shortness of breath and recommended he be restricted to light duty when working. (Tr. 776-78). Claimant spent October 3, 2019, in the hospital with a suspected myocardial infarction. (Tr. 837). On October 9, 2019, Dr. Khetpal signed a Physician's Certificate of Disability asserting that Claimant was totally and permanently disabled. (Tr. 827-28).

In late 2019 Claimant began seeing Dr. Wilson who, from December 2019 through October 2020, consistently noted Claimant's neck and back pain, as well as spinal abnormalities. (Tr. 960-1008, 1187-1238). Although in September and December of 2020 Dr. Davis noted that Claimant's back was normal, on December 14, 2020, Dr. Davis asserted in a Treating Physician's Clinical Assessment that Claimant would, *inter alia*, require eight hours of rest during an eight-hour workday due to cervical disc disease and degenerative disease of the L5 spine. (Tr. 1301, 1306, 1240-42). Dr. Davis continued to note Claimant's back was "normal" until March of 2021. (Tr. 1312-28).

State reviewing physicians determined initially and upon reconsideration that Claimant had the RFC to perform light work but could not climb ladders, ropes, or scaffolds and could only occasionally stoop. (Tr. 199-212, 233-48). Neither addressed Claimant's need for a cane to balance.

At the administrative hearing, Claimant testified about his various symptoms, specifically noting the various ways that his neck and back pain limited him in daily activities. (Tr. 173-94). He testified about his use of a cane to help balance and the various

ways in which he has attempted to find relief from pain, ranging from surgery to hot showers. (Tr. 178, 185-86). When questioned about his responsibilities in the household, he testified that he primarily ensures the bills are paid but is unable to help with other chores. (Tr. 182, 188). Additionally, he testified that he is able to shop for groceries but must utilize a "cart." (Tr. 188). He notes that he can drive but is limited by his neck pain and must be cautious because the pain medication dulls his ability to respond to conditions on the road. (Tr. 188-89).

In her written opinion at step four, the ALJ summarized Claimant's hearing testimony, as well as nearly every medical record available reflecting both physical and mental impairments. As relevant to this appeal, the ALJ referenced evidence of Claimant's spinal issues, related surgical interventions, and impairments in gait, mobility, coordination, strength, and pain. (Tr. 159). She also discussed various imaging results showing degenerative changes in Claimant's lumbar spine and those factors which aggravated or relieved Claimant's pain. *Id.* She found, however, that much of Claimant's testimony regarding pain is contradicted by records that show these symptoms were under control with medication and specifically noted that Claimant is still able to drive. (Tr. 160). She also found that, although Claimant had no record of a fall due to instability since the alleged onset date, Claimant would require the use of a cane for balance. *Id.* She was unpersuaded by either of two contradictory medical opinions from 2019 given a month apart, one that found Claimant was totally and permanently disabled and another that found he could return to work with no restrictions. (Tr. 161). She was similarly unpersuaded by a 2020 opinion by Dr. Davis that found Claimant unable to work, noting that the opinion

7

was unsupported by clinical findings and inconsistent with the record. *Id.* She was also unpersuaded by the state reviewing physicians who found Claimant could perform a slightly limited range of light work due to inconsistencies between the reviewing physicians' notes and their RFC findings, as well as a failure to consider Claimant's need for a cane. *Id.* The ALJ then concluded that Claimant was not disabled at step five. (Tr. 163).

Following the issuance of the ALJ's written opinion, Claimant submitted additional evidence to the Appeals Council. (Tr. 13-148). Included in that submission was a Vocational Report from Tammie Alfaro that contradicted the Vocational Expert's ("VE") testimony presented at the administrative hearing. Ms. Alfaro reviewed the evidence reviewed by the ALJ and the decision of the ALJ itself and contends in her report that Claimant would be unable to perform the jobs listed by the VE or any other work at the light exertional level due to Claimant's need for a cane. (Tr. 13-15). While Claimant submitted other medical records that the Appeals Council rejected, Claimant provides argument only related to Ms. Alfaro's Vocational Report. Accordingly, the Court addresses only those arguments presented. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("[The Court] will consider and discuss only those of [Claimant's] contentions that have been adequately briefed for . . . review.").

I. **The Appeals Council's Decision**

Claimant contends that the Appeals Council erred by failing to consider his newly submitted evidence. The Court disagrees. In denying Claimant's request for review, the Appeals Council acknowledged Claimant's additional evidence but determined it did not

"show a reasonable probability[2] that it would change the outcome of the decision," and did not exhibit the additional evidence or otherwise make it part of the record. (Tr. 1-4). Thus, the Appeals Council found Claimant's additional evidence did not qualify for consideration. *See Padilla v. Colvin*, 525 F. App'x 710, 712 (10th Cir. 2013). ("[T]he Appeals Council's dismissal of the additional evidence's import on [one of] the grounds [listed in 20 C.F.R. §§ 404.970, 416.1470] indicates that it ultimately found the evidence did not qualify for consideration at all."), c*f. Martinez v. Barnhart*, 444 F.3d 1201, 1207 (10th Cir. 2006) (finding that the Appeals Council implicitly determined newly submitted evidence qualified for consideration by making it part of the record).

Whether evidence qualifies for consideration by the Appeals Council is a question of law subject to *de novo* review. *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). The Appeals Council must consider additional evidence, *inter alia*, if "it is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5), 416.1470(a)(5). If the Appeals Council fails to consider qualifying evidence, "the case should be remanded for further proceedings."

---

[2] The Tenth Circuit has not revisited its definition of materiality as involving a "reasonable *possibility*" after the 2017 amendments added the phrase "reasonable *probability*" to the relevant regulations. 20 C.F.R. § 404.970(a)(5), 416.1470(a)(5). The District of New Mexico, however, has interpreted this new requirement as a "heightened materiality standard." *See Capelin v. Saul*, 2019 WL 4739536, at *7 (D.N.M. September 27, 2019), *citing Brisbee v. Berryhill*, 2019 WL 1129459, at *3 n.5 (D.N.M. March 12, 2019) ("The requirement that a claimant show a reasonable *probability* that the additional evidence would change the outcome of the decision is read as a heightened materiality standard."). The parties in this case do not contend that the outcome depends on which standard is applied.

*Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). However, if the additional evidence does not qualify for Appeals Council consideration, "it plays no further role in judicial review of the Commissioner's decision." *Id.*

In addition, Claimant must show "good cause" for not submitting the additional evidence for the ALJ's consideration. 20 C.F.R. § 404.970(b), 416.1470(b). As an initial matter, the Court notes that the Appeals Council did not reject Claimant's additional evidence because he failed to meet this "good cause" requirement and the Commissioner does not assert that Claimant failed to demonstrate good cause for not submitting the evidence earlier. The following analysis assumes, *arguendo*, that Claimant has met this requirement.

Evidence is temporally relevant only if it relates to "the period on or before the date of the [ALJ's] hearing decision." *Chambers*, 389 F.3d at 1143 (internal quotation omitted). Ms. Alfaro generated her Vocational Report on November 1, 2021, two months after the ALJ rendered her decision but analyzing temporally relevant evidence. (Tr. 13, 164). The court in *Sells v. Saul* faced a nearly identical situation where the claimant submitted to the Appeals Council a Vocational Evaluation generated by a vocational rehabilitation counselor two months after the ALJ's decision. 2020 WL 1329737 (D.N.M. Mar. 23, 2020). The court in *Sells* found that the vocational rehabilitation counselor's "review of [temporally relevant] medical opinions and statements provided by other individuals does not translate into a temporally relevant finding," and affirmed the Appeals Council's decision to reject the evidence. *Id.* at *3. The Court agrees with this analysis and finds that Ms. Alfaro's Vocational Report is not temporally relevant, and the Appeals Council did

not err in denying it consideration. *See Id.* ("Further, the reports records, and statements that [the vocational rehabilitation counselor] reviewed [were] all evidence that the ALJ considered and weighed in his decision. As such, this evidence is not new for the purposes of 20 C.F.R. § 404.970(a)(5) . . . and there is not a 'reasonable probability' that the [the vocational rehabilitation counselor]'s opinion of this evidence 'would change the outcome of the [ALJ's] decision.'") (citing *Threet*, 353 F.3d at 1191).

## II.     The Effect of a Cane on Light Work

Claimant next contends that his reliance on a cane for balance renders him incapable of any form of light work. This argument is unavailing. Claimant contends that SSR 96-9p stands for the proposition that the need for a cane eliminates light work, citing *Keyes-Zachery v. Astrue*, 695 F.3d 1156, 1168 (10th Cir. 2012) and *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009).[3] The Court disagrees with Claimant's interpretation of SSR 96-9p, and notes that it offers guidance related to the *possible* impact that a cane might have on a claimant's ability to perform *sedentary* work. Soc. Sec. R. 96-9p 1996 WL 374185. Light work is not discussed. *Id.* The Court declines to find a categorical rule that a cane necessarily precludes all light work. *See D.R. v. Kijakazi*, 2022 WL 974557, at *6 (D. Colo. Mar. 30, 2022) (finding that nothing in SSR 96-9p precludes a claimant who requires a cane from performing light work). Additionally, nothing in either *Keyes-Zachery* or *Wall* appears relevant to the issue of a cane's impact on light work. Accordingly, the Court finds that the ALJ did not err in finding that Claimant is capable of a limited range of light work

---

[3] Both citations point to a discussion of an ALJ's assessment of a claimant's credibility. Any discussion of Soc. Sec. R. 96-9p or the impact of a cane on light work is absent.

despite his need for a cane. *See Froehlich v. Comm'r of Soc. Sec.*, 2018 WL 3354998, at *4 (W.D. Okla. June 12, 2018) ("Plaintiff cites no Social Security regulation or case law *requiring* a limitation to sedentary work when the RFC includes a restriction involving an assistive device.") (emphasis original).

### III.   Dr. Davis' Opinion

Finally, Claimant contends that the ALJ engaged in improper picking and choosing of evidence because she did not give due weight to Claimant's treating physician, Dr. Wilson Davis. In support, Claimant cites Soc. Sec. R. 96-2p which requires an ALJ to grant a treating source medical opinion deference when that opinion is not entitled to controlling weight. 1996 WL 374188, at *4. As the Commissioner points out, SSR 96-2p was rescinded in 2017, and Claimant acknowledges in his reply that 20 C.F.R. §§ 404.1520c and 416.920c now control the issue of how adjudicators must articulate their consideration of medical opinions. *See Revision to Rules Regarding the Evaluation of Medical* Evidence, 82 Fed. Reg. 5,844, 5845 (Jan. 18, 2017).

Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion

or prior administrative finding including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered, although the ALJ is generally not required to explain how the other factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Here, the ALJ first found Dr. Davis' opinion unpersuasive because it was "unsupported by clinical findings," and noted several examples of normal findings from Dr. Davis' records. Additionally, the ALJ found the opinion to be "inconsistent with physical examinations from other providers." (Tr. 161). The ALJ, by discussing the persuasiveness, supportability, and consistency of Dr. Davis' opinion, appropriately considered, but still rejected the opinion in accordance with the articulation requirements of 20 C.F.R. § 404.1520c and 416.920c.

Further, the ALJ's RFC findings indicate that she considered Claimant's complaints and determined an RFC based on all of the evidence in the record. The ALJ found further limitations than those imposed by the state reviewing physicians and that, based on his complaints of difficulty balancing, Claimant required the use of a cane. (Tr. 158). "The ALJ was entitled to resolve . . . evidentiary conflicts and did so." *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) (*citing Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). This Court finds no error in the ALJ's analysis. The Court will not overturn the decision of the ALJ where, as here, it is supported by substantial evidence. *Hill v. Astrue*, 289 F. App'x 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). The evidence does not reflect further limitations related to any of the claimant's medically determinable but nonsevere impairments, and the ALJ clearly considered them when she pointed to the evidence related to them, then assessed the opinion evidence in relation to this objective evidence. Likewise, Claimant points to no medical documentation providing further limitations other than his own reports. Because he points to no evidence other than his own assertions, the Court declines to find an error here. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we

should, indeed must, exercise common sense. . . . [W]e cannot insist on technical perfection.").

## Conclusion

The Court finds that the decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Accordingly, the decision of the Commissioner is AFFIRMED.

**DATED** this 24th day of July, 2023.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**